UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANA T. TOKLEY, | |
| Petitioner, | Civ. No. 09-4546 (KM) |
| v. | |
| MICHELLE RICCI, et al., | OPINION |
| Respondents. | |

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

Petitioner, Dana T. Tokley, is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Presently pending before this Court is Mr. Tokley's application for an evidentiary hearing pursuant to Federal Rule of Civil Procedure 60(b). (*See* Dkt. No. 56) Additionally, Mr. Tokley has filed an application to appoint pro bono counsel. (*See* Dkt. No. 63) Therefore, the Clerk will be ordered to reopen this case for the sole purpose of deciding these applications. For the reasons that follow, both applications will be denied and the file will be re-closed.

## II. BACKGROUND

Mr. Tokley brought this habeas petition to challenge his State conviction of first-degree armed robbery and second-degree possession of a firearm for an unlawful purpose. In a comprehensive 2012 opinion denying the habeas petition (Dkt. No. 39), the Honorable Katharine S. Hayden set forth the factual details of Mr. Tokley's crimes and trial as follows:

> On November 11, 1996, Jose Martinez and another man he later identified as Tokley held up Quality Automobiles, a car dealership in Pennsauken, New Jersey. (Pet'r's Br.App., *State of New Jersey v. Tokley*, Appellate Division, Docket No. A–4725–99T4, Ba 2.)

Martinez was the state's key witness at Tokley's trial. (*Id.* at Ba 3.) He testified that he, Tokley, and a third man, Elliot Rosario, planned to rob Quality Automobiles, but on the night in question, Rosario did not participate. (*Id.*) According to Martinez, he and Tokley, both armed and masked and dressed in camouflage clothing, drove to the Quality car lot. (*Id.*) Martinez entered the trailer and instructed the women inside to lie down on the ground while Tokley concentrated on the manager, who they believed was carrying significant cash. (*Id.*) According to the manager, Robert Owens, one of the masked men, presumably Tokley, instructed him to "give me the money," and took $900 from him at gunpoint. (*Id.* at Ba 2.) Owens was told to open the safe, but when he explained that there was no safe, Martinez instructed his accomplice to shoot Owens. (*Id.* at Ba 3.) There were no shots fired; Martinez grabbed a pocketbook from one of the women; and both masked men fled the scene. (*Id.*)

Martinez was the only witness at Tokley's trial to identify Tokley as the masked gunman. (*Id.*) In his testimony, Martinez explained in detail how the armed robbery took place and said that he knew Tokley from prior criminal activities. (*Id.*) At the time he testified against Tokley, Martinez was serving a 20 year sentence for aggravated manslaughter, and Rosario had been murdered. (*Id.*) Martinez said he agreed to cooperate with the government and testify in exchange for a lesser charge and because he was upset his friend Rosario had been killed and he had concerns that he might also be killed. (*Id.* at Ba 2–Ba 3.) Tokley's defense counsel, Scott Griffith, vigorously cross-examined Martinez about his long criminal history, his hatred of Tokley, and his discussions with others about killing Tokley, in order to impeach his testimony. (*Id.* at Ba 4–5.) On redirect, Martinez began to more fully explain his relationship with Rosario, whom he described as like a brother. (*Id.* at Ba 5.) He said he was very angry with Tokley because he had influenced Rosario to kill someone in a prior drug transaction and that person turned out to be the "wrong guy." (*Id.*) As a result of this, Martinez testified that if he could get away with it, he would have killed Tokley. (*Id.*) Martinez then blurted out that Tokley had killed Rosario in front of him. (*Id.*) Griffith immediately objected and requested a mistrial. (*Id.*) After discussions at sidebar, the court overruled the objection and denied the request for a mistrial and instead gave a limiting instruction to the jury as follows:

> Ladies and gentlemen of the jury, you just heard the witness, Jose Martinez, testify that he has enormous animosity towards Dana Tokley because Dana

2

> Tokley shot and killed his, I guess, best friend, Elliot Rosario.
> I have overruled the objection to that testimony and I will allow you to consider it. But, I want you to consider it for a very limited purpose. And that is, for the limited purpose of deciding the credibility and believability of Jose Martinez' testimony about Dana Tokley's participation in the Quality Auto robbery.
> In other words, you are entitled to consider whether this witness has so much animosity towards Dana Tokley because of the alleged death of Elliot Rosario that he would falsely implicate Dana Tokley in the robbery of Quality Auto.
> But, bear in mind that Mr. Tokley is not on trial here for the murder of Elliot Rosario and you should not hold that statement against him. You should not assume that because this witness is saying that Dana Tokley killed Elliot Rosario you should certainly not conclude that he did so.
> You are to consider the statement for the limited purpose and for only one purpose and that is in deciding whether it may give the witness, Jose Martinez, a motive to falsely implicate and falsely accuse Dana Tokley in the robbery at Quality Auto on November 11, 1996.
> So, we are here to decide whether the State has proven Dana Tokley guilty beyond a reasonable doubt of the armed robbery at Quality Auto. You are certainly not here to decide whether Dana Tokley is guilty of murdering Elliot Rosario.

(*Id.* at Ba 5–6.) Neither the prosecutor nor defense counsel objected to the instruction. (*Id.* at Ba 6.) Before continuing with Martinez's testimony, the court further clarified its instructions:

> Ladies and gentlemen, before Mr. Martinez resumes the stand, let me just add one thing to the limiting instruction I gave you a few minutes ago. I think it was implicit in what I said. I want to make it explicit. The testimony Mr. Martinez gave about Mr. Tokley allegedly killing Elliot Rosario, you should not assume from that that Mr. Tokley has a propensity to commit crimes or that he's a bad person or an unlawful person in any way. Again, it's for the limited purpose of evaluating the motive of

3

> the witness, Jose Martinez, to be truthful or not truthful.

*Tokley v. Ricci*, No. 09-4546, 2012 WL 194134, at *1–2 (D.N.J. Jan. 20, 2012) (internal citations and footnote omitted), *aff'd*, 541 F. App'x 168 (3d Cir. 2013).

In 2000, the jury convicted Mr. Tokley of first-degree armed robbery and second-degree possession of a firearm for an unlawful purpose.

In 2009, Mr. Tokley filed this federal habeas petition. In January, 2012, Judge Haden denied the habeas petition in full. (*See* Dkt. Nos. 39 & 40) In 2013, the United States Court of Appeals for the Third Circuit affirmed the denial of the habeas petition. (*See* Dkt. No. 48)

Mr. Tokley latered filed his first motion pursuant to Federal Rule of Civil Procedure 60(b). (*See* Dkt. No. 51) Thereafter, the case was reassigned from Judge Hayden to me. (*See* Dkt. No. 57) On June 23, 2015, I denied Mr. Tokley's first Rule 60(b) motion.

As Mr. Tokley's first Rule 60(b) motion was pending, however, filed a second Rule 60(b) motion. (*See* Dkt. No. 56) This second Rule 60(b) application requests an evidentiary hearing based on new evidence. The alleged new evidence is that the United States Attorney's Office charged and convicted someone else besides him for the murder of Miguel Batista. (*See id.* at p.1) According to Mr. Tokley, the Batista was the other murder (besides the murder of Rosario) to which Martinez alluded in his trial testimony. (*See* Dkt. No. 56-1 at p.2) I ordered the government to respond to Mr. Tokley's application for an evidentiary hearing, and the government has done so. (*See* Dkt. No. 62) Subsequently, Mr. Tokley filed several letters in support of his application, as well as an application for the appointment of pro bono counsel.

### III. DISCUSSION

A court considering any Rule 60(b) motion must apply a high "extraordinary circumstances" standard. In the case of a State prisoner, the court must also consider whether the application is truly a Rule 60(b) motion, or whether it is in substance a second or successive habeas petition:

> Rule 60(b) motions are left to the sound discretion of the trial court, consistent with accepted legal principles applied in light of all relevant circumstances. *Pierce Assoc. Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988). "A court may grant a Rule 60(b) motion only in extraordinary circumstances, and a Rule 60(b) motion is not appropriate to reargue issues that the court has already considered and decided." *Weber v. Pierce*, No. 13-283, 2016 WL 2771122, at *2 (D. Del. May 13, 2016) (citations and footnote omitted); *see also Cox*, 757 F.3d at 120 (quoting *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)).
>
> Further, where, as here, a district court is presented with a motion for reconsideration after it has denied a petitioner's § 2254 application, the court must first determine if the motion constitutes a second or successive application under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). See 28 U.S.C. § 2244(b). The Third Circuit has explained that,
>
>> in those instances in which the factual predicate of a petitioner's Rule 60(b) motion attacks the manner in which the earlier habeas judgment was procured and not the underlying conviction, the Rule 60(b) motion may be adjudicated on the merits. However, when the Rule 60(b) motion seeks to collaterally attack the petitioner's underlying conviction, the motion should be treated as a successive habeas petition.
>
> *Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004); *see also Parham*, 496 F. App'x at 184 (citing *Gonzalez*, 545 U.S. at 524, 530)

*Jones v. Lagana*, No. 12-5823, 2016 WL 4154677, at *1–2 (D.N.J. Aug. 3, 2016).

This Rule 60(b) application attacks Mr. Tokley's underlying conviction. Accordingly, it is not properly considered a Rule 60(b) motion at all, but rather a second or successive habeas petition. Mr. Tokley does not assert that he has received authorization form the United States Court of Appeals for the Third Circuit for such a second or successive petition. *See* 28 U.S.C. § 2244(b)(3)(A). Accordingly, this Court is without jurisdiction to address this application.[1]

For completeness, I note that even if I had jurisdiction to consider this motion, I would deny it. A party is entitled to post-judgment relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rulr 59(b)." FED. R. CIV. P. 60(b)(2). A motion based on newly discovered evidence under Rule 60(b)(2) must be brought within one year after the entry of the judgment. *See* FED. R. CIV. P. 60(c). I make the defendant-favorable assumption that this motion is directed to Judge Hayden's denial of Mr. Tokley's habeas petition on January 20, 2012. (*See* Dkt. Nos. 39 & 40) Even so, it is untimely; Mr. Tokley did not file this motion until more than three years later, in 2015.

Considering the motion under Rule 60(b)(6) would not save it. Rule 60(b)(6) "is a catch all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014). Unlike Rule 60(b)(2), Rule 60(b)(6) does not contain a limitations period, but requires that the party file the motion "within a reasonable time." *See* FED. R. CIV. P. 60(c); *see also Davenport v. Brooks*, No. 06–5070, 2014 WL 1413943, at *5 (E.D. Pa. Apr. 14, 2014) ("There is no specific

---

[1] I do not find it appropriate in the interest of justice to transfer this motion to the United States Court of Appeals for the Third Circuit for consideration as a request to file a second or successive habeas petition. *See* 28 U.S.C. § 1631. While Mr. Tokley alludes to "new evidence," it appears as if this new evidence was available to him during the pendency of his habeas petition before Judge Hayden. Indeed, in his habeas petition, Mr. Tokley noted that "[t]he United States Attorney's office has recently indicted someone else for the murder in *U.S. v. Juan Rivera-Velez*, No. 06-445 (JEI)." (Dkt. No. 5 at p.19) Nevertheless, Mr. Tokley remains free to seek authorization to file a second or successive habeas petition from the Third Circuit.

time limit for filing motions pursuant to Rule 60. . . (b)(6). But, they must be filed within a 'reasonable time.'") Nevertheless, the general one-year limit remains a rule of thumb: "A motion under Rule 60(b)(6) filed more than a year after final judgment is generally untimely unless 'extraordinary circumstances' excuse the party's failure to proceed sooner." *Gordon v. Monoson*, 239 F. App'x 710, 713 (3d Cir. 2007). Such "extraordinary circumstances" will "rarely occur in the habeas context." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

There are no such extraordinary circumstances here. As indicated in note 1, *supra*, Mr. Tokley had the purported "newly discovered evidence" at his disposal at the time he filed his original habeas petition before Judge Hayden. In fact, he explicitly alluded to the fact that someone else had been charged with the murder of Miguel Batista in his 2009 habeas petition. Mr. Tokley did not file this request for relief from judgment until 2015, more than three years after Judge Hayden denied his habeas petition. Accordingly, to the extent that his request for post-judgment relief could be construed as seeking relief under Rule 60(b)(6), it would be untimely as well. *See Moolenaar v. Gov't of V.I.*, 822 F.2d 1342, 1348 (3d Cir. 1987) (holding Rule 60(b)(6) motion filed almost two years after the district court judgment was not made within a reasonable time when the reason for attack upon that judgment was available for attack upon the original judgment).

Mr. Tokley's application for an evidentiary hearing pursuant to Rule 60(b) will therefore be denied.

## IV. CERTIFICATE OF APPEALABILTIY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). To the extent one may be necessary with respect to my denial of Mr. Tokely's request for an evidentiary hearing pursuant to Rule 60(b), I decline to grant Mr. Tokley a certificate of appealability.

## V.   APPLICATION FOR THE APPOINTMENT OF PRO BONO COUNSEL

Mr. Tokley has also filed an application for the appointment of counsel. (*See* Dkt. No. 63) Mr. Tokley does not have a right to counsel in habeas proceedings. *See Reese v. Fulcomer*, 946 F.2d 247, 263 (3d Cir. 1991), *superseded on other grounds by statute*, 28 U.S.C. § 2254. However, 18 U.S.C. § 3006A(a)(2)(B) provides that the court has discretion to appoint counsel where "the court determines that the interests of justice so require ..." In *Reese*, the Third Circuit explained that in determining whether counsel should be appointed, a court "must first decide if petitioner has presented a nonfrivolous claim and if the appointment of counsel will benefit the petitioner and the court. Factors influencing a court's decision include the complexity of the factual and legal issues in the case, as well as the pro se petitioner's ability to investigate facts and present claims." *Reese*, 946 F.2d at 263-64.

The appointment of counsel is not warranted in this case. As described above, Mr. Brown fails to show that he has a colorable entitlement to relief under Rule 60(b).

## VI. CONCLUSION

For the foregoing reasons, Mr. Tokley's request for an evidentiary hearing pursuant to Rule 60(b) will be denied, as will his application for the appointment of pro bono counsel. A certificate of appealability shall not issue. An appropriate order will be entered.

DATED: March 30, 2017

KEVIN MCNULTY
United States District Judge